**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| STACY SHERFEY, as an administrator of the estate of Tracen Sherfey, a minor, deceased, STACEY SHERFEY, and NEIL SHERFEY, | : : : : : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No.  12-4162 |
| JOHNSON & JOHNSON, et al., | : : : : | |
| Defendants. | : : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                          **JANUARY 29, 2014**

Presently before the Court is Plaintiffs, Stacy Sherfey, as the administrator of the Estate

of Tracen Sherfey, a minor, deceased, Stacy Sherfey, and Neil Sherfey's, (collectively,

"Plaintiffs"), Motion to Remand, Defendants, Johnson & Johnson ("J&J"), McNeil-PPC, Inc.

("McNeil"), Johnson & Johnson Sales & Logistics Company, LLC ("JJSLC"), Wal-Mart Stores,

Inc. ("Wal-Mart"), Peter B. Luther, Ashley A. McEvoy, Gary Benedict, Edwin K. Kuffner, M.D.,

Lorraine K. Bailer, William C. Weldon, Colleen Goggins, Rosemary Crane, Inmar Inc.

("Inmar"), Carolina Supply Chain Services, LLC ("CSCS"), and Carolina Logistics Services,

LLC's ("CLS") (collectively, "Defendants"), Responses, and Plaintiffs' Replies thereto.  For the

reasons stated below, the Motion to Remand is denied.[1]

---

[1]This case was originally assigned to the docket of the Honorable Mary A. McLaughlin, but was
reassigned to me on August 20, 2012.  (Doc. No. 22.)

## I.      BACKGROUND

Plaintiffs[2] filed the Complaint on June 27, 2012, against Defendants in the Court of

Common Pleas of Philadelphia County.  Plaintiffs assert in their Complaint that: (1) J&J is a

New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

Compl. ¶ 30; (2) McNeil is a corporation organized under the laws of the State of New Jersey,

with its principal place of business in Fort Washington, Pennsylvania.  Id. ¶ 31; (3) JJSL is a

New Jersey limited liability company with its principal place of business in Skillman, New

Jersey.  Id. ¶ 32; (4) Wal-Mart is a corporation existing under the laws of the State of Delaware

with its principal place of business in Arkansas.  Id. ¶ 33; (5) Defendant, Peter Luther ("Luther"),

is President of McNeil, and a resident of New Jersey.  Id. ¶¶ 34, 92; (6) Defendant, Ashley

McEvoy ("McEvoy"), is President of McNeil Consumer Healthcare, and a resident of

Pennsylvania.  Id. ¶¶ 35, 210; (7) Defendant, Gary Benedict ("Benedict"), is Vice-President of

Sales and Strategy at J&J and Vice-President of Sales at McNeil, and is a resident of

Pennsylvania.  Id. ¶¶ 36, 245; (8) Defendant, Edwin K. Kuffner, M.D. ("Dr. Kuffner"), is a

Senior Medical Director of McNeil, and a resident of Pennsylvania.  Id. ¶¶ 37, 267; (9)

Defendant, Lorraine Bailer ("Bailer"), is the Supply Chain Director at McNeil, and a resident of

Pennsylvania.  Id. ¶¶ 38, 255; (10) Defendant, William C. Weldon ("Weldon"), is J&J's

Chairman of the Board and Chief Executive Officer, and is a resident of Pennsylvania.  Id. ¶¶ 39,

192; (11) Defendant, Colleen Goggins ("Goggins"), is Worldwide Chairman of J&J's Consumer

Group, and is a resident of New Jersey.  Id. ¶¶ 40, 201; (12) Defendant, Rosemary Crane

---

[2]Stacy Sherfey and Neil Sherfey, wife and husband, are residents of the State of Nevada.  Compl.
¶ 29.  They are the parents of Tracen Sherfey who is deceased.  Id.

("Crane"), was a Company Group Chairperson for J&J, and is a resident of Pennsylvania.  Id. ¶¶ 41, 233; (13) Inmar is a North Carolina corporation with its principal place of business in North Carolina.  Id. ¶ 42; and (14) CSCS and CLS are limited liability companies with principal places of business in North Carolina.  Id. ¶¶ 43-44.

This is a strict liability, breach of warranty, and negligence action brought by Plaintiffs, Stacy and Neil Sherfey, against the manufacturers, distributors, and retailers of allegedly defective and recalled Infant's Tylenol, which they claim killed their two-week-old son, Tracen Sherfey ("Tracen").  In their Complaint, Plaintiffs allege that on February 16, 2009, Stacy Sherfey gave Tracen a recommended dose of Infant's Tylenol based on the suggestion of Tracen's doctor.  Id. ¶ 103.  The following morning, Stacy Sherfey gave Tracen another dose of Infant's Tylenol according to the packaging instructions, and later this same day, gave Tracen another dose.  Id. ¶¶ 104-105.  Tracen began vomiting blood, and Stacy Sherfey took him to the local emergency room.  Id.  Tracen was later airlifted to Children's Primary Hospital in Salt Lake City, Utah.  Id. ¶ 107.  On February 19, 2009, Tracen died from acute liver failure.  Id. ¶ 108.

Plaintiffs assert the following causes of action: (1) Count I- Strict Liability against J&J, McNeil, JJSLC, and Wal-Mart; (2) Count II- another Count of Strict Liability against J&J, McNeil, JJSLC, and Wal-Mart; (3) Count III- Recklessness against J&J, McNeil, JJSLC, and Wal-Mart; (4) Count IV- Negligence against J&J, McNeil, JJSLC, and Wal-Mart; (5) Counts V-XII- Negligence against Weldon, Goggins, McEvoy, Luther, Crane, Benedict, Bailer, and Dr. Kuffner; (6) Count XIII- Breach of Express Warranty against J&J, McNeil, JJSLC, and Wal-Mart; (7) Count XIV- Breach of Implied Warranty against J&J, McNeil, JJSLC, and Wal-Mart; (8) Count XV- Negligent Infliction of Emotional Distress against J&J, McNeil, JJSLC,

Wal-Mart, Weldon, Goggins, McEvoy, Luther, Crane, Benedict, Bailer, and Dr. Kuffner; (9)

Count XVI- Violation of Nevada Consumer Protection Law against all Defendants; (10) Count

XVII- Civil Conspiracy against all Defendants; (11) Count XVIII- Aiding and Abetting against

Inmar, CSCS, and CLS; and (12) Count XIX- Punitive Damages against all Defendants.

Defendants removed this action to this Court[3] based on diversity of citizenship and the

inapplicability of the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2).[4]  Defendants

assert that the forum defendant rule is inapplicable because McNeil's principal place of business

is in Skillman, New Jersey, not Fort Washington, Pennsylvania, as Plaintiffs allege, and

therefore, is not a "forum defendant" precluded from removing this action to this Court by 28

U.S.C. § 1441(b).  (Defs.' Not. Removal ¶ 20.)  Defendants also claim that the forum defendant

rule is inapplicable because Weldon, McEvoy, Benedict, Dr. Kuffner, Bailer, and Crane are

citizens of Pennsylvania and have had been fraudulently joined in this action.[5]  (Id. ¶ 21.)

Plaintiffs filed the instant Motion to Remand on August 12, 2012.  (Doc. No. 18).

Defendants filed Responses to this Motion on September 28, 2012.  (Doc. Nos. 34, 36.)

---

[3]Defendants sought removal to this District because the United States District Court for the
Eastern District of Pennsylvania is the federal court encompassing the Philadelphia Court of Common
Pleas where Plaintiffs originally filed suit.  See 28 U.S.C. § 1441(a)

[4]This section states in relevant part:

> A civil action otherwise removable solely on the basis of the jurisdiction under
> section 1332(a) of this title may not be removed if any of the parties in interest
> properly joined and served as defendants is a citizen of the State in which such
> action is brought.

28 U.S.C. § 1441(b)(2).

[5]As will be discussed, infra, Plaintiffs assert that McNeil's Principal place of business is in Fort
Washington, Pennsylvania.  As will also be discussed, Plaintiffs allege that they have colorable claims
against the individual Defendants under Pennsylvania law which precludes removal to this Court.

As noted, this case was originally assigned to Judge McLaughlin.  At that time, Judge McLaughlin also had a very similar action on her docket, <u>Moore v. Johnson & Johnson</u>, No. 12-490.  In that case, Plaintiffs, a husband and wife, filed suit in the Philadelphia Court of Common Pleas against seventeen defendants, asserting twelve separate claims, all stemming from the death of their son from ingesting Children's Tylenol.  (Doc. No. 1.)  These Defendants included five common corporate Defendants that were named in the instant action, and four common individual Defendants.  (<u>Id.</u>)  The common corporate Defendants are J&J, McNeil, Inmar, CSCS, and CLS.  The common individual Defendants are Weldon, Goggins, Crane, and Luther.  Moreover, the parties are represented by the same counsel in both actions.

The instant action and the <u>Moore</u> case have followed almost identical procedural histories.  Defendants in <u>Moore</u> removed that action from the Philadelphia Court of Common Pleas to this Court on January 30, 2012.  (Doc. No. 1.)  Plaintiffs filed a Motion to Remand on February 19, 2012.  (Doc. No. 19.)  After the parties filed several briefs in support of their positions, Judge McLaughlin rendered a decision on November 1, 2012, denying the Remand.  <u>See</u> <u>Moore v. Johnson & Johnson</u>, 907 F. Supp. 2d 646 (E.D. Pa. 2012).  In that decision, Judge McLaughlin determined that McNeil's principal place of business is Skillman, New Jersey, and as a New Jersey citizen, McNeil was permitted to remove the underlying Pennsylvania state court action to this Court.  <u>Id.</u> at 661.  Judge McLaughlin further concluded that J&J executives and Pennsylvania residents, Weldon and Crane, were fraudulently joined and, thus, their Pennsylvania citizenship presented no bar to removal.[6]  <u>Id.</u> at 662.  Plaintiffs, subsequently, filed

---

[6]As noted, Plaintiffs in this action filed their Motion for Remand on August 12, 2012, and this action was transferred to my docket on August 20, 2012.  At or around this date, counsel for all parties agreed that the remand issues in this case were almost the same issues that were before Judge

a Motion for Reconsideration on November 13, 2012.  (Doc. No. 75.)  After extensive litigation

by the parties on the issues in the Motion for Reconsideration, including several briefings, an

evidentiary hearing on July 19, 2013, and post-evidentiary filings, Judge McLaughlin denied the

Motion for Reconsideration and reiterated her findings.  See Moore v. Johnson & Johnson, No.

12-490, 2013 WL 5298573, at *1 (E.D. Pa. Sept. 20, 2013).

On October 16, 2013, we removed this matter from civil suspense and placed it back on

our active docket, and the parties were ordered to file supplemental briefs solely on the issue of

fraudulent joinder.  (Doc. No. 45.)  Oral argument on this issue was scheduled for December 6,

2013.  The parties filed such briefs on November 1, 2013.  (Doc. Nos. 46-49.)  On December 3,

2013, counsel for Defendants sent this Court a letter-brief requesting us to allow them to address

an issue at the scheduled oral argument on December 6, 2013, that they had not address in prior

briefings due to their own oversight.  The issue that Defendants requested to address concerned

the application of Pennsylvania's statute of limitations to the individual Defendants in this

action.  On this same date, Plaintiffs' counsel faxed us a letter objecting to this request stating

that this issue has never been properly raised or preserved.  Also on this same date, we informed

both counsel that we would allow Defendants to address this issue at the oral argument, but

would give Plaintiffs the opportunity to fully address and brief this issue thereafter.  Oral

argument was held on December 6, 2013, and the parties were permitted to address the issue of

---

McLaughlin in Moore, and that for the sake of judicial economy, we should not decide their Motion to
Remand until Judge McLaughlin rendered her decision.  After Judge McLaughlin handed down her
decision, and Plaintiffs filed a Motion for Reconsideration, counsel for the parties again agreed that this
Court should stay its decision on the Motion for Remand before us until Judge McLaughlin ruled on the
Motion for Reconsideration before her.  We, thus, placed this matter in civil suspense on January 9,
2013.  (Doc. No. 43.)

the statute of limitations.  On December 16, 2013, Plaintiffs' counsel sent us a detailed letter-brief addressing this issue, and Defendants' counsel sent a letter-brief in response on December 20, 2013.

## II.     DISCUSSION

### A.  McNeil's Principal Place of Business

As noted above, counsel for all parties agreed that the remand issues in this case are almost identical to those issues before Judge McLaughlin in <u>Moore</u>.  In fact, the issue of McNeil's principal place of business is one of the issues before us.  Because the issue is identical, all counsel agreed that we should not decide the Motion to Remand until Judge McLaughlin rendered her decision in <u>Moore</u>.  On November 1, 2012, Judge McLaughlin denied the Remand, and determined that McNeil's principal place of business is Skillman, New Jersey. <u>See Moore</u>, 907 F. Supp. 2d at 661.  As also noted, Plaintiffs then filed a Motion for Reconsideration, and counsel again agreed that this Court should stay its decision on the Motion for Remand until Judge McLaughlin ruled.  On September 20, 2013, Judge McLaughlin denied the Motion for Reconsideration and reiterated her findings, once again holding that McNeil's principal place of business is in Skillman, New Jersey.  <u>See Moore</u>, 2013 WL 5298573, at *1.

We believe it is important to note that there are at least three other pending actions in this District against McNeil for damages related to the distribution of alleged defective Infant and Children's Tylenol in which McNeil has removed the state action to the Eastern District of Pennsylvania, and Plaintiffs have filed motions to remand back to state court.  In each, plaintiffs assert that McNeil's principal place of business is in Fort Washington, Pennsylvania and defendants argue that it is in Skillman, New Jersey.  In each of these actions, the presiding Court

indicated that it was either waiting for Judge McLaughlin to render her decision in <u>Moore</u> before deciding the issue of McNeil's principal place of business and/or relied on her initial decision finding that McNeil's principal place of business is in Skillman, New Jersey.

In <u>Brown v. Johnson & Johnson, et al.</u>, No. 12-4929, plaintiffs moved to remand arguing that McNeil is a citizen of Pennsylvania and that under the "forum defendant" rule, is barred from removing this action to a federal court sitting in Pennsylvania.  The Honorable Paul Diamond noted that Plaintiffs relied on the same evidence presented to Judge McLaughlin in <u>Moore.</u>  (Doc. No. 36.)  Judge Diamond also noted that Judge McLaughlin ruled that removal was proper because McNeil's principal place of business is in Skillman, New Jersey.  (<u>Id.</u>)  In coming to his decision denying remand, on February 8, 2013, Judge Diamond stated that "I agree with Judge McLaughlin and adopt her reasoning here."  (<u>Id.</u>)  The docket indicates that Plaintiffs elected not to file a motion for reconsideration.

Likewise, in another Children's Tylenol case before Judge Diamond that was also removed to this Court, and plaintiff filed a motion to remand arguing that McNeil's principal place of business is in Pennsylvania, Judge Diamond denied the motion on October 12, 2012, without prejudice, and stated that "[P]laintiff may resubmit her Motion after Judge McLaughlin rules on the remand question in <u>Moore</u>."  <u>See</u> <u>Epperson v. Johnson & Johnson, et al.</u>, Civil Action No. 12-1533 (Doc. No. 14.)  Plaintiff, however, elected to not re-file the motion for remand after Judge McLaughlin's September 20, 2013 decision denying reconsideration.

A very similar action to the instant case is also presently before the Honorable Gene Pratter.  <u>See</u> <u>Ardt v. Johnson & Johnson, et al.</u>, No. 12-6633.  Unlike Plaintiffs in <u>Brown</u> and

Epperson, plaintiffs in Ardt,[7] like the case before us, also brought causes of action against individual corporate officers, Luther, McEvoy, Benedict, Dr. Kuffner, Bailer, Weldon, Goggins, and Crane.  Defendants removed the action from state court to this Court, and plaintiffs filed a Motion to Remand.  Judge Pratter placed the action in suspense on August 26, 2013, pending the "outcome of the motion to remand in Moore."  (Doc. No. 27.)  On October 8, 2013, Judge Pratter ordered that in consideration of the recent decision in Moore, the parties were to file supplemental briefs relating to the Moore decision and also scheduled oral argument to be heard in December 2013.  (Doc. 28.)  To date, Judge Pratter has yet to render a decision on the Motion to Remand.

We discuss these related actions because all the motions to remand in those actions involve the issue of whether McNeil's principal place of business is in Skillman, New Jersey, or Fort Washington, Pennsylvania, and in all these actions, the presiding Judges decided to wait for Judge McLaughlin to hand down her decision in Moore.  As noted above, after extensive litigation by the parties on the issues in the Motion for Reconsideration, including several briefings, an evidentiary hearing on July 19, 2013, and post-evidentiary filings, Judge McLaughlin denied the Motion for Reconsideration and reiterated her findings.  See Moore, 2013 WL 5298573, at *1.  In the instant action, after a careful reading of Judge McLaughlin's decisions in Moore and in consideration of the numerous briefings filed by the parties before us, we agree with the Court's rationale in Moore and adopt it here.  Accordingly, we find that McNeil's principal place of business is in Skillman, New Jersey.

---

[7]The parties in Ardt are also represented by the same counsel as the case before us.

### B.  Fraudulent Joinder

We now move onto the issue of whether any one or all of the individual Pennsylvania Defendants in this action, Weldon, McEvoy, Benedict, Dr. Kuffner, Bailer and Crane,[8] were fraudulently joined as a Defendant in this action.  Under 28 U.S.C. § 1447(c), a plaintiff may remand an action to state court if removal was "procedurally defective."  Snider v. Sterling Airways, Inc., No. 12-3054, 2013 WL 159813, at *1 (E.D. Pa. Jan. 15, 2013).  A removal is procedurally defective if it violates the "forum defendant rule."  Id.  Under the forum defendant rule, a civil action that is "otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

"Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand."  Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992).  "The removing party carries a heavy burden of persuasion" in establishing fraudulent joinder.  Id.  "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."  Id.

"In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed," and "must assume as true all factual allegations of the complaint."  Id. at 851-52.  The court must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."  Id. at 852.  Significantly, the court's

---

[8]As noted earlier, Defendants Goggins and Luther are residents of New Jersey.

inquiry into the validity of a complaint when faced with an assertion of fraudulent joinder is less searching than that triggered upon the filing of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Id.  "[A] district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'"  In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006).

Thus, we will not find a joinder to be fraudulent "[s]imply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action."  Lyall v. Airtran Airlines, Inc., 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000).  Rather, we will only find fraudulent joinder where the Plaintiffs' claims are "wholly insubstantial and frivolous."  Batoff, 977 F.2d at 852 (quoting Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989)).  "In other words, a finding of fraudulent joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility."  West v. Marriott Hotel Servs., Inc., No. 10-4130, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010).  "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant."  Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

Here, if we determine that the joinder of all of the Pennsylvania individual Defendants, Weldon, McEvoy, Benedict, Dr. Kuffner, Bailer or Crane, was fraudulent, we can "disregard, for jurisdictional purposes, the citizenship of [the] nondiverse defendants, assume jurisdiction over [the] case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  Briscoe, 448 F.3d at 216.  On the other hand, if we determine that we do not have jurisdiction over the action because joinder of any one of these Defendants was not fraudulent, we must remand the case to state court.  Id. (citing 28 U.S.C. § 1447(c)).

### 1. Individual Liability

Under Pennsylvania law, although an officer or agent of a corporation who takes no part in the commission of a tort committed by the corporation is not individually liable to third parties for such a tort, such an officer or agent may be held liable in tort under the "participation theory."[9]  Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983); Roethlein v. Portnoff Law Associates, Ltd., 25 A.3d 1274, 1280 (Pa. Cmwlth. 2011).  Under that theory, the court imposes liability on the participating individual as an actor, not as an owner or officer.  Wicks, 470 A.2d at 90.  To impose liability under the participation theory, the plaintiff must establish that the individual officer or agent engaged in misfeasance rather than mere nonfeasance.  Shay v. Flight C Helicopter Services, Inc., 822 A.2d 1, 17 (Pa. Super. 2003); Roethlein, 25 A.3d at 1280.  Misfeasance involves the improper performance of an act whereas nonfeasance refers to the simple failure to act.  Shay, 822 A.2d at 17.  Liability may exist under the participation theory even though the agent or officer derived no personal benefit and the corporation alone was enriched by the tortious act.  Sanzone v. Phoenix Technologies, Inc., No. 89-5397, 1990 WL 50732, at *13 (E.D. Pa.  Apr. 19, 1990).

### a. Weldon

As we did with regard to the issue of McNeil's principal place of business, we consider the Moore decision significant concerning the issue of fraudulent joinder, in light of the

---

[9]Pennsylvania courts also recognize executive tort liability under a traditional veil-piercing theory, which is premised on the abuse of the corporate form.  Wicks, 470 A.2d at 89-90; see also Moore, 907 F. Supp. 2d at 663, n.10.  However, here, like Moore, Plaintiffs do not allege claims against the individual corporate officers based on that theory.

extensive litigation on this issue before the <u>Moore</u> Court.  As indicated earlier, the common individual Defendants with <u>Moore</u> are Weldon, Goggins, Crane and Luther.  Goggins and Luther are residents of New Jersey, and thus, the <u>Moore</u> Court only considered whether Weldon and/or Crane were fraudulently joined.  We consider Weldon's liability separately from the other individual Defendants because, as in <u>Moore</u>, Weldon is alleged to be the most culpable of the individual corporate officers and executives as J&J's Chairman of the Board and Chief Executive Officer.  <u>Moore</u> considered Weldon and Crane's individual liability under Pennsylvania's participation theory as outlined above.

<u>Moore</u> noted that plaintiffs alleged that Weldon "had personal knowledge of the deplorable conditions" at J&J's facilities, and was "involved in and responsible for the decisions that ultimately led to allegedly defective pediatric medicines being released on the market." <u>Moore</u>, 907 F. Supp. 2d at 663.  The Court stated that, in particular, plaintiffs cited "Weldon's decision to reduce the size of the corporate compliance group in 2007 as a contributing factor to the degradation in quality control at J&J facilities."  <u>Id.</u>  The Court also noted that plaintiffs' contentions that it was Weldon's "lack of leadership" that led the Court to determined that "[a]t most, these assertions, taken as true, establish that Weldon set corporate priorities that 'he should have known' would cause injury to the members of the public."  <u>Id.</u>  The Court added that Weldon was not alleged to have "specifically directed a particular act," "i.e., the manufacture and distribution of the purportedly defective Children's Tylenol or any later improper recall of that product."  <u>Id.</u>  The Court determined that "[t]hese allegations do not rise to the level of actionable misfeasance."  <u>Id.</u>

The Court further noted that plaintiffs also allege that Weldon's statements at the

September 30, 2010, congressional hearing establish his personal liability in that Weldon negligently downplayed the dangers posed by recalled McNeil products.  Id. at 664.  The Court, however, determined that because these statements were made two months after the death of Plaintiff River Moore, the Court failed to "see how it could have contributed in any way to River's injury."  Id.  The Court decided further that "Weldon's other statements attempting to 'downplay' the manufacturing problems that precipitated McNeil-PPCs recalls also do not provide a basis for tort liability," because the complaint alleges that these statements were made "at the time of the 2010 recalls," and that this "inexact allegation cannot establish that plaintiffs relied on Weldon's statements to form a mistaken impression that Children's Tylenol was safe" when purchased.[10]  Id. at 664 n.11.

In the instant case, Plaintiffs make the same allegations against Weldon.  We, again, agree with Judge McLaughlin's reasoning in finding that Plaintiffs have not set forth allegations against Weldon that would impose liability against him under Pennsylvania's participation theory.  We note that like, Moore, Weldon's statements at the September, 2010 congressional hearing were made well over a year after the tragic death of Tracen Sherfey on February 19, 2009.  We also fail to see how such statements contributed to the death of Tracen.

In addition, Plaintiffs set forth many allegations in their Complaint attempting to establish acts of misfeasance on the part of Weldon.  Specifically, some of these allegations include:

---

[10]The Moore Court also noted that plaintiffs argued that Weldon stated at the September 2010, congressional hearing that he accepted "full accountability for the problems at McNeil."  Moore, 907 F. Supp. 2d at 664.  The Court, however, reasoned that this statement is "akin to the 'buck stops here,'" and "does not sufficiently demonstrate that Weldon directly participated in any negligent activity at McNeil-PPC's Fort Washington facility."  Id.

> Defendant Weldon substantially reduced the resources available for quality control and investigations related to the manufacture of pediatric over-the-counter medicines, particularly Children's and Infant's Tylenol;
>
> In 2007, in the face of the FDA's rebuke and McNeil's recognition of the quality control problems, Weldon and Goggins remarkably dismantled J&J's corporate compliance group which was responsible for improving quality control and ensuring the safety of, inter alia, pediatric medicines;
>
> Despite these glaring warning signals, Defendants Weldon and Goggins consciously decided to reduce the resources available to the corporate compliance group that oversaw the consumer healthcare division through biannual audits of J&J's operating companies, including McNeil; and
>
> Defendant Weldon and Goggins, however, cut the corporate compliance group and de-emphasized the importance of quality control.

Compl. ¶¶ 53, 61, 64.

As noted earlier, in order to plead an individual's liability premised on the participation theory, the complaint must allege specific facts that plausibly suggest the individual's participation in the tortious activity.  See Wicks, 470 A.2d at 90.  "[M]ere averment that a corporate officer should have known the consequences of the liability-creating corporate act . . . is insufficient to impose liability" and thereby fails to state a claim for relief.  Id; see also Johnson Controls, Inc. v. Wachovia Bank, NA, No. 10-7253, 2011 WL 4923299, at *3 (E.D. Pa. Oct. 17, 2011); McCracken v. Daimler Chrysler Motors Co., No. 07–2202, 2008 WL 920344, at *3 (E.D. Pa. Apr. 3, 2008).

We find that these allegations, accepted as true, may establish that Weldon set corporate priorities that he should have known would cause injury to the public.  They, however, do not

amount to acts of misfeasance.  Moreover, we agree with <u>Moore</u> in that Weldon was not alleged to have directed a particular act specifically connected to the manufacture and distribution of the purportedly defective Infant's Tylenol or any later improper recall of that product that caused or contributed to the death of Tracen.  We, thus, determine that Plaintiffs' allegations against Weldon fail to amount to actionable misfeasance under the participation theory, and accordingly, we find that Weldon has been fraudulently joined in this action.

### b. Crane, McEvoy, Benedict, Dr. Kuffner, and Bailer

In the instant Complaint, Plaintiffs include the following allegations against Defendants Crane, McEvoy, Benedict, Dr. Kuffner, and Bailer:

> Defendants Weldon, Goggins, McEvoy, Luther and Crane focused on increasing sales at the expense of the safety and quality of pediatric over-the-counter medicines;

> To accomplish these cost savings, at the direction of Defendants Weldon, Goggins, Crane, McEvoy and Luther, J&J fired experienced quality control staff at the Fort Washington, Pennsylvania facility and replaced them with inexperienced contract workers;

> Defendants Weldon, Goggins, Crane, McEvoy and Luther then diverted some of these costs savings to the marketing and advertising budgets of children's and infant's drugs;

> Then Defendants Weldon, Goggins, Crane, McEvoy and Luther replaced salaried full-time scientists in the analytical laboratory with contract workers who lacked technical pharmaceutical experience;

> Rather than address the underlying problems at the Fort Washington plant, Defendants Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer sought to downplay the quality issues in the manufacture of pediatric medicines and the health risks to children from taking those drugs;

16

Despite knowledge of the manufacturing defects in the pediatric medicines, Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer insisted on continuing to ship the product for sale to the public;

Based on their knowledge of the problems with those drugs, Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer began planning a secret recall of Infant's and Children's Tylenol products;

It was imperative to Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer that they hide from the public the manufacturing problems and increased number of adverse event reports so J&J could continue selling Infant's and Children's Tylenol products to the public;

Defendants J&J, McNeil, JJSL, Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer were concerned that a public acknowlegement of the product defects or product recall in J&J's flagship brand Tylenol would cause the general public to stop purchasing the more expensive, name-brand product;

Defendants J&J, McNeil, JJSL, Weldon, Goggins, Luther, McEvoy, Benedict, Kuffner, and Bailer were motivated to prevent parents from switching permanently to less expensive acetaminophen products; and

To conceal from the public the defects in the Infant's and Children's Tylenol products, the Defendants employed the services of Igmar and its subsidiaries Carolina Supply Chain Services and Carolina Logistics Services to implement a phantom recall and conduct "market assessments" to determine the risk that children faced by the defective medicines.

Compl. ¶¶ 54-56, 65, 80-86.

Plaintiffs assert that their allegations against these individual corporate officers or executives are supported by two decisions from this District in which McNeil was a defendant. See Swanson v. McNeil-PPC, Inc., No. 96-0375, 1996 WL 182806, at *1 (E.D. Pa. Apr. 17, 1996); Pearson v. McNeil-PPC, Inc., No. 96-446, 1996 WL 208456, at *1 (E.D. Pa. Apr. 1996).

17

In both cases, the Court rejected McNeil's argument that a McNeil executive was fraudulently joined. These two cases found colorable individual claims against Dr. Tony Temple, then Director of Medical Affairs at McNeil, based on alleged negligence in failing to ensure the safety of products sold by McNeil. However, we agree with Defendants that both <u>Swanson</u> and <u>Pearson</u> do not lend much support to Plaintiffs' position that the individual Defendants were not fraudulently joined.

We first note that the <u>Swanson</u> Court did not address Pennsylvania's applicable participation theory in coming to its decision that plaintiffs alleged a colorable claim against Dr. Temple. In addition, this decision has never been cited by any Court in this Circuit or any other Court to support individual liability of a corporate officer or executive. The <u>Pearson</u> Court did note that the Pennsylvania Supreme Court in <u>Wicks</u>, 470 A.2d at 89-90, held that a corporate officer can be held personally liable for misfeasance, but not nonfeasance. <u>Pearson</u>, 1996 WL 208456, at *5 n.4. The Court stated that:

> I note that one problematic aspect of the plaintiff's claim against Dr. Temple is that the plaintiff arguably seeks to hold Dr. Temple liable not for any action that he took, but for what he failed to do -- implore McNeil to put warning labels on Tylenol. This claim, therefore, may be cast as one of nonfeasance (or omission), rather than malfeasance.[11]

<u>Id.</u> However, instead of deciding the issue of whether the allegations against Dr. Temple rose to the level of actionable misfeasance, the Court sidestepped the issue and simply noted that "it is possible that the plaintiff's complaint - in its totality - does allege that Dr. Temple, despite his knowledge of the potential danger, affirmatively directed the production and marketing of the

---

[11]It is noted that Courts discussing the participation theory often interchange the terms misfeasance and malfeasance. We use the term misfeasance as used in <u>Wicks</u>, 470 A.2d at 86.

drug, and that, therefore, liability is premised on malfeasance, not nonfeasance." Id.

We are of the opinion, however, that in order to be able to properly decide the issue of fraudulent joinder, Pennsylvania law requires us to make a determination whether Plaintiffs' allegations amount to misfeasance or nonfeasance. See Wicks, 470 A.2d at 89-90; see also McCracken, 2008 WL 920344 at *1. Accordingly, we consider here whether the Plaintiffs' Complaint against the individual corporate Defendants allege acts of misfeasance or nonfeasance.

We first note that the Moore Court found that plaintiffs failed to "make a colorable claim against Crane, for whom the allegations are even sparser." Moore, 907 F. Supp. 2d at 663. The Court stated that the "factual assertions in the complaint involving Crane are limited to the bare assertion that she had 'personal knowledge of the deplorable conditions' at the Fort Washington plant and that she was 'integrally involved in and responsible for the decisions that led to the degradation of quality control.'" Id. The Court determined that "[a]s with Weldon, even if Crane's decisions led to the eventual production of defective Children's Tylenol, the complaint does not allege that Crane 'deliberately ordered' the defective production or distribution of the OTC medication." Id. The Court concluded that "[t]his is not enough to establish Crane's personal involvement in McNeil-PPC's production of purportedly defective Children's Tylenol." Id.

We agree with Moore with respect to Crane, and also find that the allegations against McEvoy, Benedict, Dr. Kuffner, and Bailer allege acts of nonfeasance and not misfeasance. As stated above, misfeasance involves the improper performance of an act; whereas, nonfeasance refers to the simple failure to act. Shay, 822 A.2d at 17. Plaintiffs have certainly set forth many allegations against these individual Defendants in their Complaint. However, the vast majority

of the allegations clearly fall within the category of failure to perform their job duties with due care rather than active participation in tortious conduct that injured Plaintiffs. Thus, these allegations amount to allegations of nonfeasance rather than malfeasance.

Plaintiffs do attempt to allege specific allegations of misfeasance on the part of one or more of these Defendants. For example, as outlined above, Plaintiffs aver that "[d]espite the knowledge of manufacturing defects in pediatric medicines," Defendants "insisted on continuing to ship the product for sale to the public," and that Defendants "[b]ased on knowledge of the problems with those drugs," "began planning a secret recall of Infant's and Children's Tylenol." Compl. ¶¶ 81-82. Plaintiffs also aver that Defendants hid "from the public the manufacturing problems and increased number of adverse event reports so J&J could continue selling Infants' and Children's Tylenol products to the public," and Defendants employed the services of Igmar to implement a phantom recall to conceal from the public the defects in the pediatric Tylenol products. Id. ¶¶ 83, 86.

We are of the opinion, however, that such allegations are merely conclusory and offer no specific facts as to the individual liability of each of these Defendants. They fail to allege any facts showing active and personal participation in tortious conduct that harmed Plaintiffs. At best, Plaintiffs allege that Defendants had notice or general knowledge of defects in the products, but failed to act in a way that would have prevented those specific products that allegedly harmed Plaintiffs from being sold. Moreover, none of these individual Defendants are alleged to have manufactured, inspected, or released any contaminated medication, including Infant's Tylenol that allegedly caused the death of Tracen. Even assuming that all allegations against the individual Defendants are true, we find that the allegations amount to acts of nonfeasance, not

20

misfeasance, which fail to impose individual liability for any of these Defendants under the participation theory.  Because "there is no reasonable basis in fact or colorable ground supporting the claim[s]" against the individual Defendants, we find that they all have been fraudulently joined.  See Batoff, 977 F.2d at 851-52.

In addition, "failure to allege that a corporate officer was an active participant as required under the 'participation theory' will result in dismissal of a complaint for failure to state a claim." McCracken, 2008 WL 920344 at *3.  Accordingly, we dismiss Weldon, Crane, McEvoy, Benedict, Dr. Kuffner, and Bailer from this action.[12]  Moreover, for the same reasons that these individual Pennsylvania resident Defendants are dismissed from this action, we also dismiss New Jersey resident Defendants Goggins and Luther.

### C.  Statute of Limitations

As noted earlier, on December 3, 2013, three days prior to the oral argument held before us on December 6, 2013,  Defendants' counsel sent this Court a letter-brief arguing for the first time that Pennsylvania's statute of limitations bars Plaintiffs' causes of actions against the individual Defendants.  See 42 Pa. C.S.A. § 5524(2).  This section imposes a two-year limitations period for personal injury and wrongful death claims.  Id.  Defendants assert that this Court "must apply the same statute of limitations that the Pennsylvania state court would apply: the shorter of the period which applies in the state in which the claim accrued, in this case Nevada, or the period that applies in Pennsylvania."[13]  (Defendants' December 3, 2013 Letter-

---

[12]Similarly, in Moore, Judge McLaughlin dismissed the individual Defendants that she found were fraudulently joined.  (See Doc. No. 74).

[13]42 Pa.C.S.A. § 5521(b) states:

Brief) (citing 42 Pa.C.S.A. § 5521(b)).  Defendants further assert that the Complaint alleges that

Tracen was given three doses of Infant's Tylenol on February 16 and 17, 2009, that he began

vomiting blood after the third dose, and died of acute liver failure on February 19, 2009.  (Id.)

Defendants state that the Complaint was filed on June 27, 2012, more than three years and four

months after Tracen's death, and therefore, on the face of the Complaint, the claims against the

individual Defendants are barred by the statute of limitations.  (Id.)  Defendants further argue that

Pennsylvania law concerning the "discovery rule" and/or the doctrine of fraudulent concealment

would not toll the statute of limitations in this case.  See Pastierik v. Duquesne Light Co., 526

A.2d 323, 326-27 (Pa. 1987); Mest v. Cabot Corp., 449 F.3d 502, 517 (3d Cir. 1985).

    "The discovery rule tolls the accrual of the statute of limitations when a plaintiff is

unable, 'despite the exercise of due diligence, to know of the injury or its cause.'"  Mest, 449

F.3d 510 (quoting Pocono Int'l Raceway, Inc. v. Pococno Produce, Inc., 468 A.2d 468, 471 (Pa.

1983)).  Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not

begin to run until "the plaintiff knows, or reasonably should know, (1) that he has been injured,

and (2) that his injury has been caused by another party's conduct."  Id.  "Pennsylvania's

fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or

concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of

---

The period of limitation applicable to a claim accruing outside this
Commonwealth shall be either that provided or prescribed by the law of
the place where the claim accrued or by the law of this Commonwealth,
whichever is shorter.

42 Pa.C.S.A. § 5521(b).

inquiry.'" Id. (quoting <u>Ciccarelli v. Carey Canadian Mines, Ltd.</u>, 757 F.2d 548, 556 (3d Cir. 1985)).

Plaintiffs reply in their December 16, 2013 letter-brief that Defendants' statute of limitations argument assumes that Pennsylvania law applies to Plaintiffs' wrongful death and survival claims, but is does not.  (Plaintiffs' December 16, 2013 Letter-Brief.)  Plaintiffs assert that the discovery rule under Nevada law applies to wrongful death actions.  (<u>Id.</u>) (citing <u>Pope v. Gray</u>, 760 P.2d 763, 766 (Nev. 1988)).  Plaintiffs acknowledge that "[t]here is no conflict on the limitations period because both Pennsylvania and Nevada have a two-year statute of limitations for wrongful death actions."  (Plaintiffs' December 16, 2013 Letter-Brief, at 2 n.1.) (citing NRS 11.190(4)(e).   Plaintiffs, however, assert that given the difference between the laws governing the application of the discovery rule in Pennsylvania and Nevada in wrongful death cases that this Court must engage in a choice of law analysis to decide which state's law applies.  (<u>Id.</u> at 2.) Plaintiffs argue that a choice of law analysis would clearly conclude that Nevada law applies, and that because Nevada's discovery rule and law concerning fraudulent concealment apply to Plaintiffs' wrongful death and survival claims, their claims against the individual Defendants are colorable and not barred by the statute of limitations.[14]  (Plaintiffs' December 16, 2013 Letter-Brief at 3-8.) (citing <u>Pope</u>, 760 P.2d at 766.)

Defendants respond in their December 20, 2013 letter-brief that the choice of limitations period is not determined by a general choice of law analysis.  (Defs.' December 20, 2013 Letter-Brief at 1.)  Rather, "[i]t is dictated by the very specific rule in the 'borrowing statute', 42 Pa.

---

[14]Plaintiffs assert that they did not discover until April 1, 2012, that the Infant's Tylenol which was administered to Tracen was recalled.  Compl. ¶ 54.

C.S.A. § 5521(b)," and that under this statute this Court must apply the limitations period prescribed by Pennsylvania law if that period is shorter than the period under the law of the state where the claim accrued.  (Id.)

We agree with Defendants that Pennsylvania's statute of limitations applies to the case before us.  "Pennsylvania considers statutes of limitations to be procedural and therefore applies its own statutes of limitations unless the so-called 'borrowing statute' applies."  AAMCO Transmissions, Inc. v. Harris, 759 F. Supp. 1141, 1143-44 (E.D. Pa. 1991); see also Donovan v. Idant Labs, 625 F. Supp. 2d 256, 265 (E.D. Pa. 2009); Agere Systems, Inc. v. Advanced Environmental Technology Corp., 552 F. Supp. 2d 515, 523 (E.D. Pa. 2008).  Defendants further assert that "Pennsylvania law controls not only the length of the applicable period but all matters that pertain to the application of the statute, including accrual and tolling."  (Defendants' December 20, 2013 Letter-Brief.)

As stated, we agree that Pennsylvania's statute of limitations applies to the causes of action in this case with regard to the individual Defendants.  However, at this time, we need not make a determination whether the discovery rule and/or the doctrine of fraudulent concealment toll the Pennsylvania statute of limitations concerning these individual Defendants and whether Plaintiffs' causes of action are barred by such statute because we have determined that all of the individual Defendants have all been fraudulently joined, and are dismissed from this action. Moreover, at this stage of the litigation, we do not have sufficient information from the parties to make a determination whether, under the discovery rule, Plaintiffs, exercising due diligence, knew or should have known that the individual Defendants caused them injuries within the Pennsylvania's two-year applicable statute of limitations.  See Mest, 449 F.3d at 510.  We, also,

24

do not have sufficient information to make a determination whether "through fraud or concealment" Defendants caused Plaintiffs "to relax vigilance or deviate from the right of inquiry" under the fraudulent concealment doctrine.  Id.

## III.  CONCLUSION

We find that McNeil's principal place of business is located in Skillman, New Jersey. Consequently, McNeil and Plaintiffs have diverse citizenship.  Also, we also find that Plaintiffs' allegations against individual Defendants, Weldon, Crane, McEvoy, Benedict, Dr. Kuffner, and Bailer, fail to amount to actionable misfeasance under Pennsylvania's participation theory and, consequently, these Defendants have been fraudulently joined in this action.  See Wicks, 470 A.2d at 90.  Because we have made a determination of fraudulent joinder, we can "disregard, for jurisdictional purposes, the citizenship of [the] nondiverse defendants, assume jurisdiction over [the] case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Briscoe, 448 F.3d at 216.  Thus, we dismiss Pennsylvania resident Defendants Weldon, Crane, McEvoy, Benedict, Dr. Kuffner, and Bailer from this action, and also dismiss New Jersey resident Defendants Goggins and Luther.

Finally, because we have found that the individual Defendants have all been fraudulently joined, we need not consider whether Pennsylvania's statute of limitations would bar claims against these Defendants.  Accordingly, Plaintiffs' Motion to Remand is denied.

An appropriate Order follows.