## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STACY SHERFEY, as an administrator of the estate of Tracen Sherfey, a minor, deceased, STACY SHERFEY, and NEIL SHERFEY, | : : : : : : | CIVIL ACTION |
|  | : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 12-4162 |
| JOHNSON & JOHNSON, et al., | : : : | |
| Defendants. | : : : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                  APRIL $2.5$   , 2014

Presently before the Court is Defendants, Inmar Inc., Carolina Supply Chain Services,

LLC, and Carolina Logistics Services, LLC's (collectively, the "Inmar Defendants"), Motion to

Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

Plaintiffs, Stacy Sherfey, as the administrator of the Estate of Tracen Sherfey, a minor, deceased,

Stacy Sherfey, and Neil Sherfey's, (collectively, "Plaintiffs") Response, and the Inmar

Defendants' Reply.  For the reasons stated below, the Motion is granted.

## I.    BACKGROUND[1]

Plaintiffs[2] filed the Complaint on June 27, 2012, against Johnson & Johnson ("J&J"),

McNeil-PPC, Inc. ("McNeil"), Johnson & Johnson Sales & Logistics Company, LLC ("JJSLC")

(collectively, the J&J Defendants"), Wal-Mart Stores, Inc., the Inmar Defendants[3], and individual

executives and officers of McNeil in the Court of Common Pleas of Philadelphia County.

Defendants removed this action to this Court based on diversity of citizenship and the

inapplicability of the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2).  Plaintiffs filed a

Motion to Remand, which we denied on January 29, 2014.  See Sherfey, 2014 WL 715518, at *1.

We also dismissed from this action the individual executive Defendants because they were

fraudulently joined.  Id. at 5-11.

Plaintiffs assert that their two-week-old son, Tracen Sherfey ("Tracen") died from

ingesting defective and recalled Infants' Tylenol.  In their Complaint, Plaintiffs allege that on

February 16, 2009, Stacy Sherfey gave Tracen a recommended dose of Infants' Tylenol based on

the suggestion of Tracen's doctor.  Id. ¶ 103.  The following morning, Stacy Sherfey gave Tracen

another dose of Infants' Tylenol in accordance with the instructions on the package, and later this

same day, gave Tracen another dose.  Id. ¶¶ 104-105.  Tracen began vomiting blood, and Stacy

Sherfey took him to the local emergency room.  Id.  Tracen was later airlifted to Children's

---

[1]A complete procedural and factual history of this case is set forth in this Court's prior
Memorandum Opinion.  See Sherfey v. Johnson & Johnson, No. 12-4162, 2014 WL 715518, at *1 (E.D.
Pa. Jan. 29, 2014).

[2]Stacy Sherfey and Neil Sherfey, wife and husband, are residents of the State of Nevada. Compl.
¶ 29.  They are the parents of Tracen Sherfey who is deceased.  Id.

[3]Inmar is a North Carolina corporation with its principal place of business in North Carolina.  Id.
¶ 42.  CSCS and CLS are limited liability companies with principal places of business in North Carolina.
Id. ¶¶ 43-44.

Primary Hospital in Salt Lake City, Utah. Id. ¶ 107. On February 19, 2009, Tracen died from acute liver failure. Id. ¶ 108. Plaintiffs assert the following causes of action against the Inmar Defendants:[4] (1) Count XVI- Violation of Nevada Consumer Protection Law; (2) Count XVII- Civil Conspiracy; (3) Count XVIII- Aiding and Abetting; and (4) Count XIX- Punitive Damages.

The Inmar Defendants filed the instant Motion to Dismiss on February 21, 2014. (Doc. No. 56.) Plaintiffs filed a Response on March 25, 2014, and the Inmar Defendants filed a Reply on April 10, 2014. (Doc. Nos. 60, 64.)

## II.   DISCUSSION

### A.   Standing

The concept of standing is an integral part of "the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Hagan v. United States, No. 01-5506, 2002 WL 338882, at *4 (E.D. Pa. Mar. 2, 2002) (citing Simon v. Eastern KY Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). A motion to dismiss for want of standing implicates the court's subject matter jurisdiction, and is therefore appropriately brought under Federal Rule of Civil Procedure 12(b)(1). Id. (citing Miller v. Hygrade Food Prods. Corp., 89 F. Supp. 2d 643, 646 (E.D. Pa. 2000)). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims and they must be dismissed." Common Cause of PA v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (citing Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006)).

The "irreducable constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury

---

[4]For purposes of this Motion, we list only the causes of action against the Inmar Defendants.

in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Id. (internal citations omitted). A particularized injury is one that affects the plaintiff in a personal and individual way. Id. at 560 n.1. Second, there must be a causal connection between the injury and the conduct complained of, which requires the injury to be "fairly . . . traceable to the challenged action of the defendant and not th[e] result [of] the independent action of some third party not before the court." Id. at 560-61 (citing Simon, 426 U.S. at 41-42). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id. (citing Simon, 426 U.S. at 38). At all times, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" Id. (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 115 n.31 (1979)).

Here, the Inmar Defendants argue that the Complaint should be dismissed against them under Rule 12(b)(1) because Plaintiffs lack standing to assert claims against them. (Defs.' Mot. Dismiss at 8.) Specifically, they state that Plaintiffs "lack standing because no plausible causation theory makes their alleged injury traceable" to the Inmar Defendants. (Id.) Plaintiffs respond that "[w]ithout the clandestine assistance of the Inmar Defendants, J&J and McNeil could not have concealed for so long the manufacturing defects of its pediatric medicines." (Pls.' Resp. at 3.) Plaintiffs allege further that the "Inmar Defendants' implementation of the phantom recall of pediatric medicines permitted J&J and McNeil to further conceal from Plaintiffs that the later-recalled Infants' Tylenol, which killed Tracen Sherfey, was dangerous and defective." (Id.) Plaintiffs aver in their Complaint:

4

> To conceal from the public the defects in Infants' and Children's Tylenol products, the Defendants employed the services of Inmar and its subsidiaries Carolina Supply Chain Services and Carolina Logistics Services to implement a phantom recall and conduct "market assessments" to determine the risk that children faced by the defective medicines.
>
> At the direction of J&J, McNeil and their executives, Inmar, Carolina Supply Chain Services and Carolina Logistics Services analyzed J&J and McNeil's exposure by traveling to retail outlets across the United States to measure what defective medicines remained on the shelves.
>
> Inmar, Carolina Supply Chain Services and Carolina Logistics Services conducted the work clandestinely so that the FDA and the public would be unaware that the J&J and McNeil products were defective and dangerous.

Compl. ¶¶ 86-88.

The Inmar Defendants assert that two recent cases from this District decided by the

Honorable Mary A. McLaughlin, In re McNeil Comsumer Healthcare, et al., Marketing and Sales

Litig., MDL No. 2190, 2011 WL 2802854, at *1 (E.D. Pa. July 15, 2011) and Moore v. Johnson

& Johnson, No. 2:12-cv-00490-MAM (E.D. Pa. Feb. 4, 2014),[5] which dismissed them as parties

based on similar allegations as those alleged in this action, support their position that Plaintiffs

lack standing to bring the instant causes of action against them. We agree.

In re McNeil was a multi-district consolidated consumer class action, principally alleging

that "quality control issues affect[ed] certain over-the- counter healthcare products manufactured

by Johnson & Johnson's consumer healthcare division, McNeil Consumer Healthcare." McNeil,

2011 WL 2802854 at *1. With respect to the Inmar Defendants, plaintiffs alleged that they

participated in a June 2009 market removal which they termed a "phantom recall" of Motrin IB

---

[5]This Order and decision rendered by Judge McLaughlin is not cited in Westlaw or Lexis at present. We, thus, will cite to it using its document number on the Court's docket.

and a "market assessment" of non-Motrin products. Id. at 5. Plaintiffs argued that had the Inmar

Defendants not participated in the phantom recall, J&J would have been forced to publicly

disclose the defective nature of the products. Id. at *15. The Court dismissed the Inmar

Defendants for lack of standing holding that plaintiffs failed to establish causation. Id. at 18. The

Court stated:

> First, there are no allegations that the Contractor Defendants[6]
> participated in, or had influence over, the decision to conduct a
> "phantom recall," or decisions regarding the scope of said recall.
> Second, the plaintiffs have not alleged that the Contractor
> Defendants had any knowledge of the specific defects affecting
> Motrin IB, such that they would have or should have refused to
> conduct a "phantom recall." Finally, even if the Contractor
> Defendants had refused to conduct a "phantom recall," there is no
> basis for assuming that the J&J Defendants would have been
> unable to find other contractors to conduct the recall, or that the
> J&J Defendants otherwise would have foregone a "phantom recall"
> in favor of a public recall. The plaintiffs' theory of causation,
> therefore, hinges on the Contractor Defendants' possessing a
> degree of influence over the J&J Defendants that is not plausible
> on the limited allegations in the CAC. Instead, the plaintiffs'
> injuries appear to be based on conduct more appropriately
> attributed to the J&J Defendants.

Id. at *16.

In Moore v. Johnson & Johnson, the plaintiffs advanced similar allegations against the

Inmar Defendants as those in In re McNeil. See Doc. No. 111 at 1-3. The difference was that the

Moore complaint alleged personal injury and the In re McNeil complaint alleged economic harm.

Id. at 3. In Moore, the plaintiffs averred that the Inmar Defendants' "acts allowed the J&J

defendants to conceal the manufacturing defects of Children's Tylenol." Id. at 2-3. If the

---

[6]We note that in both In re McNeil and Moore, Judge McLaughlin refers to the Inmar Defendants
as the "Contractor Defendants."

Contractor Defendants [Inmar Defendants] had not been involved, Katy Moore would not have purchased the Children's Tylenol that led to River Moore's death. The plaintiffs 'seek wrongful death and survival damages from [Inmar Defendants] for their role in hiding the dangers of the J&J Defendants' pediatric over-the counter drugs.'" Id. at 5. The Moore Court stated that the same analysis that applied in In re McNeil applied to Moore. Id. at 6. The Court, in dismissing the Inmar Defendants, found that the plaintiffs lacked standing because they could not establish causation. Id. The Court reasoned:

> The Complaint's only allegation is that the Contractor Defendants were hired to conduct a "market assessment." The Complaint does not allege that the Contractor Defendants knew or should have known that the products involved in the "market assessment" were defective or dangerous. There are no allegations that the Contractor Defendants had any influence over J&J's decision to conduct a market assessment, that the market assessment was wrongful in any way, or that the market assessment influenced the way J&J and McNeil conducted the recall of the Children's Tylenol products.

Id. The Court further concluded that:

> The Complaint does not establish how the Contractor Defendants' performance of a market assessment to determine the amount of product on store shelves in July 2009 could have possibly caused Katy Moore to purchase defective Children's Tylenol or administer it to River Moore.

Id. at 6-7.

In the case before this Court, Plaintiffs assert in their Response that the Inmar Defendants's Motion is "based on the bizarre claim that Plaintiffs lack 'standing' to assert claims against them."[7] (Pls.' Resp. at 2.) We first note that this argument is puzzling because Judge

---

[7]Plaintiffs also assert that the Inmar Defendants's Motion to Dismiss is "premised on the misrepresentation that the Inmar Defendants' 'phantom recall' activities were limited to Motrin products,

McLaughlin adopted this exact same Article III standing analysis in dismissing the Inmar
Defendants in In re McNeil and Moore.  We also note that, while Plaintiffs attempt to distinguish
In re McNeil from this present action in their Response, they make no attempt to distinguish
Moore from the instant case.

Plaintiffs attempt to distinguish this action from In re McNeil by arguing that the "Inmar
Defendants seek to equate this matter with a dismissed consumer fraud case where the putative
class plaintiffs could not articulate an 'injury in fact.'"  (Id. at 2.)  Plaintiffs assert that In re
McNeil involved "plaintiffs' standing and the sufficiency of pleading of the economic harm."
(Id.)  Plaintiffs further claim that they have adequately pleaded the harms in this case since it
involved the death of a two-week-old boy.  (Id.)  However, it is apparent from even a cursory
reading of In re McNeil that, while the issue of "injury in fact" under Lujan's first prong was
discussed, the Court clearly dismissed the Inmar Defendants for failure to establish Article III
causation.  The Court stated that:

> [t]he plaintiffs have failed to establish that their purported injuries
> are "fairly traceable" to the Contractor Defendants' conduct.  The
> Court will therefore dismiss all claims against the Contractor
> Defendants for lack of standing.  The dismissal will be with
> prejudice, because the Court concludes that the plaintiffs would be
> unable to establish causation upon amendment.

In re McNeil, 2011 WL 2802854, at *18.

---

not the Infants' Tylenol which killed Tracen Sherfey."  (Pls.' Resp. at 1.)  We disagree.  The Inmar
Defendants clearly rely on the Moore decision in seeking dismissal for lack of standing.  As indicated
above, Moore dealt with allegedly defective Children's Tylenol and generally discussed the alleged
"phantom recall" of "Children's Tylenol products."  (Doc. No. 111 at 6.)  Thus, while the Inmar
Defendants rely on In re McNeil and Moore, they do not rely on the premise that the Inmar Defendants'
activities were limited to Motrin products.

8

In the instant action, there is no issue that the Plaintiffs suffered an "injury in fact." The issue before us, regarding standing, is clearly causation. See Lujan, 504 U.S. at 560. To satisfy this causation requirement, the plaintiffs must establish that the injuries in question "fairly can be traced to the challenged action" of a particular defendant, rather than to the action of an independent third party. In re McNeil, 2011 WL 2802854, at *18 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); see also Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir. 2009). "This requirement is not as demanding as the proximate causation required under tort law. Instead, an indirect causal relationship may suffice, so long as there is a 'substantial likelihood' that the defendant's conduct caused the plaintiffs' harm." Id. (citing Pub. Interest Research Grp. v. Powell Duffryn Terminals, 913 F.2d 64, 72 (3d Cir. 1990).

Here, we agree with the holdings in In re McNeil and Moore, and find that the Complaint does not support a "causal connection between the injury and the conduct complained of," and the death of Tracen is not "fairly . . . traceable to the challenged action[s]" of the Inmar Defendants. See Lujan, 504 U.S. at 560-61. The In re McNeil and Moore Courts determined that the plaintiffs' theory of causation hinged on the Inmar Defendants possessing a degree of influence over the J&J Defendants that was not plausible on the limited allegations in the complaints. See In re McNeil, 2011 WL 2802854, at *18; Moore, Doc. 111 at 6. Likewise, in this case, Plaintiffs' Complaint does not establish that the Inmar Defendants had such influence over the J&J Defendants. In fact, there are no allegations in the Complaint that the Inmar Defendants had influence over the J&J Defendants decision to conduct a "phantom recall," and/or decisions regarding the scope of such a recall. The Complaint also does not allege that the Inmar Defendants had any knowledge of the specific defects affecting the Infants' Tylenol. See

9

Id. at 16.

In addition, the Complaint fails to allege any facts to support a conclusion that the Inmar Defendants carried out "market assessments" of Infants' Tylenol.  As in In re McNeil and Moore, Plaintiffs, here, fail to define the term "market assessment," or explain in any way how the Inmar Defendants, as part of this market assessment, could have influenced the J&J Defendants with respect to recall decisions.  See In re McNeil, 2011 WL, at *17 n.30; see also Moore, Doc. No. 111 at 4.  Like Moore, we are of the opinion that the instant Complaint does not define "market assessments," and does not explain why such assessments were unlawful.  Id. at 6-7.

Moreover, the Complaint fails to allege facts to support a conclusion that the Inmar Defendants even carried out a "phantom recall" of Infants' Tylenol and/or conducted a "market assessment" that caused or could have contributed to the cause of Tracen's death.  The sole factual basis regarding the genesis of a phantom recall and/or a market assessment is an email communication from Peter Luther, President of McNeil ("Luther"), dated May 27, 2009.  Comp. ¶¶ 92, 226.  Specifically, Plaintiffs assert that in this email, Luther "ratified and approved the phantom/stealth recalls/unethical 'market assessments.'"[8] Compl. ¶ 226.  However, it is alleged

---

[8]The email stated:

Group,

> Where is the miss here?  Given our current financial situation, I hope we're not going to really double our cost to do this.  Let's make this happen ASAP.

> Thanks,

Compl. ¶ 226.

that Tracen consumed the defective product and died in February 2009.[9]  Therefore, we agree with the Inmar Defendants that the alleged phantom recall post-dated Tracen's death, and, therefore, could not have caused it.[10]  Accordingly, we dismiss all claims against the Inmar Defendants for lack of standing.

     An appropriate Order follows.

---

[9]It is notable that in <u>Moore</u>, Plaintiffs alleged that the "market assessment" conducted by the Inmar Defendants occurred in July 2009, or about six months after the death of Tracen.  (Doc. No. 111 at 3.)

[10]In their Response, Plaintiffs spend much space asserting allegations of wrong-doings by J&J executives, including planning a secret recall of Infants' and Children's Tylenol products, and hiring the Inmar Defendants to implement a phantom recall.  (Pls.' Resp. at 3-7.)  However, as noted earlier, we dismissed these individual Defendants in our prior Memorandum Opinion as being fraudulently joined. <u>See</u> <u>Sherfey</u>, No. 12-4162, 2014 WL 715518, at *5-11.