## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY SHERFEY, as an administrator of the estate of Tracen Sherfey, a minor, deceased, STACY SHERFEY, and NEIL SHERFEY, | : : : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No.  12-4162 |
| JOHNSON & JOHNSON, et al., | : : : | |
| Defendants. | : : | |

## <u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                                      **JUNE 10, 2014**

Presently before the Court is Defendants, Johnson & Johnson ("J&J"), McNeil-PPC, Inc. ("McNeil"), Johnson & Johnson Sales & Logistics Company, LLC, and Wal-Mart Stores, Inc.'s (collectively, "Defendants"), Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs, Stacy Sherfey, as the administrator of the Estate of Tracen Sherfey, a minor, deceased, Stacy Sherfey, and Neil Sherfey's (collectively, "Plaintiffs"), Response, and Defendants' Reply thereto.  For the reasons stated below, the Motion is denied.

I.    **BACKGROUND**[1]

Plaintiffs[2] filed the Complaint on June 27, 2012, against Defendants, Carolina Supply

Chain Services, LLC, Carolina Logistics Services, LLC (collectively, the "Inmar Defendants"),

and individual executives and officers of McNeil in the Court of Common Pleas of Philadelphia

County.  Defendants removed this action to this Court based on diversity of citizenship and the

inapplicability of the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2).  Plaintiffs filed a

Motion to Remand, which we denied on January 29, 2014.  See Sherfey, 2014 WL 715518, at *1.

We also dismissed from this action the individual executive Defendants because they were

fraudulently joined.  Id. at 5-11.  In a subsequent decision rendered on April 25, 2014, we

dismissed the Inmar Defendants from this action for lack of standing.  See Sherfey v. Johnson &

Johnson, No. 12-4162, 2014 WL 1663966, at *1-5 (E.D. Pa. Apr. 25, 2014).

Plaintiffs assert that their two-week-old son, Tracen Sherfey ("Tracen"), died from

ingesting defective and recalled Infants' Tylenol.  Plaintiffs allege that on February 16, 2009,

Stacy Sherfey gave Tracen a recommended dose of Infants' Tylenol based on the suggestion of

Tracen's doctor.  Id. ¶ 103.  The following morning, Stacy Sherfey gave Tracen another dose of

Infants' Tylenol in accordance with the instructions on the package, and later this same day, gave

Tracen another dose.  Id. ¶¶ 104-105.  Tracen began vomiting blood, and Stacy Sherfey took him

to the local emergency room.  Id.  Tracen was later airlifted to Children's Primary Hospital in

---

[1]A complete procedural and factual history of this case is set forth in this Court's prior
Memorandum Opinion.  See  Sherfey v. Johnson & Johnson, No. 12-4162, 2014 WL 715518, at *1 (E.D.
Pa. Jan. 29, 2014).

[2]Stacy Sherfey and Neil Sherfey, wife and husband, are residents of the State of Nevada.  Compl.
¶ 29.  They are the parents of Tracen Sherfey, who is deceased.  Id.

Salt Lake City, Utah.  Id. ¶ 107.  On February 19, 2009, Tracen died from acute liver failure.  Id. ¶ 108.  Plaintiffs assert the following causes of action against the Defendants: (1) Count I- Strict Liability; (2) Count II- another Count of Strict Liability; (3) Count III- Recklessness; (4) Count IV- Negligence; (5) Count XIII- Breach of Express Warranty; (6) Count XIV- Breach of Implied Warranty; (7) Count XV- Negligent Infliction of Emotional Distress; (8) Count XVI- Violation of Nevada Consumer Protection Law; (9) Count XVII- Civil Conspiracy; and (10) Count XIX- Punitive Damages.

Defendants filed the instant Motion to Dismiss on February 14, 2014.  (Doc. No. 54.) Plaintiffs filed a Response, and Defendants filed a Reply.  (Doc. Nos. 59, 63.)

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Philadelphia, No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the

3

progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Philadelphia, 415 F. App'x 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must

demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible."  Id. at 683; see also Holmes v. Gates, 403 Fed. App'x 670, 673 (3d Cir. 2010).

## III.    DISCUSSION

### A.    Applicable Statutes of Limitations

As noted in our previous decision, three days prior to the oral argument held before us on December 6, 2013, which focused solely on the issue of fraudulent joinder, Defendants' counsel sent this Court a letter-brief arguing for the first time that Pennsylvania's statute of limitations bars Plaintiffs' causes of actions against Defendants.  See 42 Pa. C.S.A. § 5524(2).  This section imposes a two-year limitations period for personal injury and wrongful death claims.  Id. Defendants asserted that under Pennsylvania's "borrowing statute," this Court "must apply the same statute of limitations that the Pennsylvania state court would apply: the shorter of the period which applies in the state in which the claim accrued, in this case Nevada, or the period that applies in Pennsylvania."  (Defs.' Dec. 3, 2013 Letter-Brief) (citing 42 Pa.C.S.A. § 5521(b)).

Defendants asserted that the Complaint alleges that Tracen died on February 19, 2009, as a result of ingesting defective Infant's Tylenol, and that the Complaint was filed on June 27, 2012, more than three years and four months after Tracen's death.[3]  (Id.)  Defendants argued, therefore, that on the face of the Complaint, the claims against them are barred by the statute of limitations.  (Id.)  Defendants further argued that Pennsylvania law concerning the "discovery rule" and/or the doctrine of fraudulent concealment would not toll the statute of limitations in

_____

[3]Plaintiffs assert that they did not discover until April 1, 2012, that the Infant's Tylenol which was administered to Tracen was recalled.  Compl. ¶ 54.

this case.  See Pastierik v. Duquesne Light Co., 526 A.2d 323, 326-27 (Pa. 1987); Mest v. Cabot

Corp., 449 F.3d 502, 517 (3d Cir. 1985).

"The discovery rule tolls the accrual of the statute of limitations when a plaintiff is

unable, 'despite the exercise of due diligence, to know of the injury or its cause.'"  Mest, 449

F.3d 510 (quoting Pocono Int'l Raceway, Inc. v. Pococno Produce, Inc., 468 A.2d 468, 471 (Pa.

1983)).  Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not

begin to run until "the plaintiff knows, or reasonably should know (1) that he has been injured,

and (2) that his injury has been caused by another party's conduct."  Id.  "Pennsylvania's

fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or

concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of

inquiry.'"  Id. (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir.

1985)).

Plaintiffs replied in a December 16, 2013 letter-brief that Defendants' "statute of

limitations argument assumes that Pennsylvania law applies to Plaintiffs' wrongful death and

survival claims, but it does not."  (Pls.' Dec. 16, 2013 Letter-Brief.)  Plaintiffs asserted that the

discovery rule under Nevada law applies to the wrongful death actions.[4]  (Id.) (citing Pope, 760

P.2d at 766).  Given the difference between the laws governing the application of the discovery

rule in Pennsylvania and Nevada in wrongful death cases, Plaintiffs assert that this Court must

engage in a choice of law analysis to decide which state's law applies.  (Id. at 2.)  Plaintiffs

argued that a choice of law analysis would clearly conclude that Nevada law applies.  (Id.)  As

---

[4]As will be discussed, infra, the Nevada Supreme Court held that the discovery rule
applies to wrongful death actions.  See Pope v. Gray, 760 P.2d 763, 766 (Nev. 1988).

such, Plaintiffs assert that because Nevada's discovery rule and law concerning fraudulent concealment apply to Plaintiffs' wrongful death and survival claims, their claims against the individual Defendants are colorable and not barred by the statute of limitations.  (Pls.' Dec. 16, 2013 Letter-Brief at 3-8.) (citing Pope, 760 P.2d at 766).

Defendants responded in their December 20, 2013 letter-brief that the choice of limitations period is not determined by a general choice of law analysis.  (Defs.' Dec. 20, 2013 Letter-Brief at 1.)  Rather, "[i]t is dictated by the very specific rule in the 'borrowing statute', 42 Pa. C.S.A. § 5521(b)," and that under this statute this Court must apply the limitations period prescribed by Pennsylvania law if that period is shorter than the period under the law of the state where the claim accrued.  (Id.)

Upon consideration of these "letter-briefs" at that time, we agreed with Defendants that Pennsylvania's statute of limitations applies to Plaintiffs' wrongful death claim.  Sherfey, 2014 WL 715518, at *11-13.  We also ruled, however, that at that stage of the litigation, we did not have sufficient information from the parties to make a determination whether, under the discovery rule, Plaintiffs, exercising due diligence, knew or should have known that the individual Defendants caused them injuries within Pennsylvania's two-year applicable statute of limitations.  Id.  Additionally, we ruled that we also did not have sufficient information to make a determination whether "through fraud or concealment" Defendants caused Plaintiffs "to relax vigilance or deviate from the right of inquiry" under the fraudulent concealment doctrine.  Id.

Defendants again raise this statute of limitations argument in the instant Motion to Dismiss.  They argue that under Pennsylvania's "borrowing" statute, Pennsylvania's statute of limitation applies to this action and bars Plaintiffs' wrongful death claims.  (Defs.' Mot. Dismiss

7

at 4.)  Defendants also assert that all of Plaintiffs' "personal injury and products liability claims, including strict liability, recklessness, negligence, negligent infliction of emotional distress, breach of implied liability, civil conspiracy, and punitive damages, should be dismissed with respect to all moving Defendants because these claims are barred by the applicable statutes of limitations."  (Id. at 4.)  We will first address the issue of whether Pennsylvania or Nevada's statutes of limitations apply to Plaintiffs' individual causes of action.

> 1.       **Wrongful Death Claim**

As noted, we stated in an earlier decision that we agreed with Defendants that Pennsylvania's statute of limitations is applicable to Plaintiffs' wrongful death claim.  However, upon consideration of the more extensive briefings filed by the parties on the issue of whether Pennsylvania or Nevada's statute of limitations is applicable to Plaintiffs' wrongful death claim and, after further consideration of the law regarding such, we are now of the opinion that Nevada's two-year statute of limitations applies to Plaintiffs' wrong death claim.

A federal court exercising diversity jurisdiction must apply the forum's choice of law rules to determine the applicable statute of limitations.  See Guaranty Trust Co. v. York, 326 U.S. 99 (1945).  In most situations, Pennsylvania courts apply the Pennsylvania statute of limitations. Ross v. Johns–Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985).  A limited exception to this general rule is provided by Pennsylvania's "borrowing statute," which provides that "[t]he period of limitations applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the laws of the place where the claim accrued or by the law of this

Commonwealth, whichever first bars the claim."  42 Pa.C.S. § 5521(b).[5]

Here, we note that, on its face, the language of the borrowing statute does not direct that Pennsylvania's statute of limitations be applied to the instant wrongful death claim.  First, there is no question in this case that the cause of action accrued in Nevada.  A claim accrues where "the final significant event that is essential to a suable claim occurs."  Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co., 372 F.2d 18, 20 (3rd Cir. 1966).  Tracen lived in Nevada and ingested the alleged defective Infants' Tylenol there.  Moreover, Defendants have argued in several other defective pediatric Tylenol actions that the law of the state where the product was ingested and where the injury occurred should be applied.  See, e.g., Robinson v. McNeil Consumer Healthcare, 615 F.3d 861 (7th Cir. 2010); Moore v. Johnson & Johnson, 907 F. Supp. 2d 654, 665 (E.D. Pa. 2012); Wolf v. McNeil-PPC, Inc., 703 F. Supp. 2d 487 (E.D. Pa. 2010).  Accordingly, we find that the action accrued in Nevada.

Next, we opine that, under the plain language of the borrowing statute, neither the law of Nevada[6] nor the law of Pennsylvania[7] bars the wrongful death claim first.  Rather, they bar the

---

[5]42 Pa.C.S.A. § 5521(b) states:

> The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever is shorter.

42 Pa.C.S.A. § 5521(b).

[6] This section states in relevant part:

> 4. Within two years:
>
> (e) Except as otherwise provided in NRS 11.215, an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another.

9

claim at the same time because both states impose a two-year statute of limitations for wrongful death and personal injury claims. Thus, on the face of the borrowing statute, because Pennsylvania does not bar the claim first, Nevada, being the jurisdiction where the claim accrued, would have its statute of limitation applicable to the instant wrongful death claim.

We recognize, however, that Defendants argue that Pennsylvania would actually bar the claim first because the discovery rule, even where it does apply, cannot toll limitations for wrongful death or survival actions beyond the date of death. See Pastierik , 526 A.2d at 326-27; see also Stroud v. Abington Memorial Hosp. No. 06-4840, 2008 WL 2061408, at *9-10 (E.D. Pa. May 13, 2008); Pennock v. Lenzi, 882 A.2d 1057, 1060-61 (Pa. Commw. Ct. 2005). The Pennsylvania Supreme Court stated in Pastierik:

> Because death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period.

526 A.2d at 327. The Court, accordingly, found that an action for wrongful death accrues at the decedent's death, and an action for survival accrues when the decedent knew or reasonably should have known of the injury, but at the latest, at the decedent's death. Id. at 326-27.

However, the Third Circuit stated in McKenna v. Ortho Pharmaceutical Corp., that the

---

Nev. Rev. Stat. § 11.190(4)(e).

[7]This section provides, in part, that the following actions must be commenced within two years:
> An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

42 Pa.C.S.A. § 5524(2).

"purpose of the Pennsylvania 'borrowing statute' requires us to look to the law of the state where the cause of action arose to determine not only the prescribed period of limitations but also the point at which the statute begins to run."  622 F.2d 657, 660 (3d Cir. 1980); see also Frankentek Residential Systems, LLC v. Buerger, Nos. 12-767, 12-3505, 12-12-768, 2014 WL 1623775, at *4 (E.D. Pa. Apr. 29, 2014); Insurance Com'r of State of Connecticut v. Novotny, No. 07-262, 2009 WL 1653553, at *2 (W.D. Pa. June 11, 2009).

We, thus, look to the law of Nevada, where the action arose, to determine when the statute of limitations began to run.  As noted, Nevada imposes a two-year limitation on the commencement of wrongful death actions.  Additionally, the Nevada Supreme Court held that the discovery rule applies to wrongful death actions.  See Pope v. Gray, 760 P.2d 763, 766 (Nev. 1988).  The Court stated that "applying the discovery rule to personal injury actions, but not wrongful death actions, is incongruous and difficult to justify."  Id. at 766.  Therefore, we find that because we are to look to Nevada law as to when the statue of limitations began to run, and Nevada law permits the application of the discovery rule, under the "borrowing statute," Pennsylvania would not first bar the claim.[8]  Accordingly, we find that Nevada's statute of limitation applies to the wrongful death claim in the instant action.

Moreover, in the alternative, we find that even if Pennsylvania's statute of limitations was

---

[8]We note that under Nevada law, the question of whether Plaintiffs exercised reasonable diligence in discovering their causes of action "is a question of fact to be determined by the jury or trial court after a full hearing."  See Bemis v. Estate of Bemis, 967 P.2d 437, 440 (Nev. 1998); see also Millspaugh v. Millspaugh, 611 P.2d 201, 203 (Nev. 1980).  Dismissal on statute of limitations grounds is only appropriate "when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered" the facts giving rise to the cause of action.  Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir. 1992) (quoting Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir. 1984)).

applicable in this case regarding Plaintiffs' wrongful death claim, it would not be barred at this time because the discovery rule would be applicable under a conflict of law analysis. Given the difference between the laws governing the application of the discovery rule in Pennsylvania and Nevada in wrongful death cases, Plaintiffs assert that this Court must engage in a choice of law analysis to decide which state's law applies. (Pls.' Resp. at 13.) Plaintiffs argue that a choice of law analysis would clearly conclude that Nevada law applies, and that Nevada's discovery rule would apply to Plaintiffs' wrongful death and survival claims. (Id.) We agree.

Pennsylvania's choice of law approach adopts a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964); see also Knipe v. SmithKline Beecham, 583 F. Supp. 2d 602, 613 (E.D. Pa. 2008). Pennsylvania's analysis consists of three steps. First, the court must determine whether a real conflict exists, that is, whether these states would actually treat the relevant issues any differently. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-30 (3d Cir. 2007). If there is no substantive difference between the laws of the competing states, no real conflict exists and forum law applies. Id. at 230. "Where a real conflict exists, the court moves to the second step and examines the governmental policies underlying each law in order to classify the conflict as true, false or an unprovided for situation." Id. A false conflict occurs where only one state's interests would be impaired, and the law of the interested state applies. LeJeune v. Bliss-Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Where, on the other hand, each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law, a true conflict exists. Id. Where there is a true conflict, the court turns to the third step to "determine which state has the 'greater interest in the application of its law.'"

12

Hammersmith, 480 F.3d at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). This determination demands that a court weigh the contacts each jurisdiction has with the dispute on a qualitative scale according to the extent they implicate the policies and interests underlying the particular dispute before the court.  Id.

Plaintiffs assert that a false conflict exists here because Pennsylvania does not have a legitimate interest in prohibiting the application of the Nevada discovery rule in a death case involving a Nevada decedent whose injuries occurred in Nevada.  We agree.  In Moore v. Johnson, No. 2:12-cv-00490 (E.D Pa.), an action involving a Washington plaintiff who ingested alleged defective Children's Tylenol that was manufactured in Pennsylvania, Defendants argued that Washington state law should apply because:

> Plaintiffs are not Pennsylvania citizens, the product was not purchased here.  See Compl. ¶¶ 17, 174-185.  They have no connection to Pennsylvania, and Pennsylvania's interest in protecting its citizens does not apply in this case.  Nor does Pennsylvania have any interest in applying more liberal rules of recovery.  For these reasons, the conflict between Washington's laws and Pennsylvania's laws is a "false conflict" and Washington law should be applied.

(Pls.' Resp., Ex. C at 11.)  Defendants added that "[a]ny interest Pennsylvania could have is outweighed by Washington's interest in protecting its residents from injuries that occurred in Washington and regulating those who sell products there."  Id. at 12 (citing Wolfe v. McNeil-PPC, Inc., 703 F. Supp. 2d 489, 493-94 (E.D. Pa. 2010)).  For these same reasons, we find that there is a false conflict between Nevada's law and Pennsylvania's law regarding the application of the discovery rule because Nevada's interests outweigh any interest Pennsylvania might have.[9]

---

[9] The Court in Moore, noted that because McNeil's Fort Washington, Pennsylvania facility produced the allegedly defective Children's Tylenol that made up a substantial part of the plaintiffs'

Next, we find that the principle of "depecage" permits this Court to apply the Nevada discovery rule to the Pennsylvania limitations period. "Depecage is the principle whereby 'different states' laws may apply to different issues in a single case.'" (Pls.' Resp. at 12) (citing Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006)); see also Broome v. Antler' Hunting Club, 595 F.2d 921, 924 (3d Cir. 1979). In Zavecz v. Yield Dynamics, Inc., the Third Circuit stated that in "[a]pplying Pennsylvania's choice-of-law rules, we have recognized that '[b]ecause choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as depecage.'" 179 Fed. App'x 116, 120 (3d Cir. 2006) (citing Berg Chilling Sys., Inc., 435 F.3d at 462). The Court further stated that "[i]t follows from the principle of 'depecage' that a court's application of one state's law to one issue in a case does not preclude the court from deciding that another state's law governs another issue in the same case." Id. We agree that the principle of "depecage" can be applied to the instant action. Thus, we find that even if Pennsylvania's statute of limitations was applicable to Plaintiffs' wrongful death claim, we would apply Nevada's discovery rule and allow Plaintiffs the opportunity to establish that the discovery rule tolled Nevada's two-year statute of limitations.

### 2. Survival Claims

Defendants assert that, in this action, the only longer statute of limitation period provided

---

allegations against them, "Pennsylvania arguably has an interest in monitoring the activities of manufacturers within its borders and determining the scope of liability faced by its citizens." Moore, 907 F. Supp. 2d at 663. However, the Court found that Washington's interests were greater. Id. Likewise here, although the alleged defective Infants' Tylenol was manufactured in Pennsylvania, Nevada's interests in protecting its citizens who purchased the product there and were injured there is significantly greater than Pennsylvania's interests.

by Nevada law is that for survival actions and, accordingly, under the borrowing statute,

Pennsylvania's limitation statute applies to these claims.  See Nev. Rev. Stat. § 11.310(1).  This

section provides:

> If the person entitled to bring an action dies before the expiration of the
> time limited for the commencement thereof, and the cause of action
> survives, an action may be commenced by the person's representatives,
> after the expiration of that time, and within 1 year from the person's death.

Nev. Rev. Stat. § 11.310(1).  We, however, disagree that Nevada's statute provides for a longer

period in the instant action.  As noted earlier, the Pennsylvania Supreme Court in Pastierik stated

that an action for survival accrues when the decedent knew or reasonably should have known of

the injury, but at the latest, at the decedent's death.  526 A.2d at 327.  In this case, under

Pennsylvania's two-year statute, Plaintiffs would have had to file within two years after Tracen's

death, and the discovery rule would not be applicable.  See Id.  Under Nevada's statute, the

survival action would have had to been filed within one year of Tracen's death.  Thus, under the

borrowing statute, Nevada would have barred the claim first.  However, as discussed above,

Nevada permits application of the discovery rule in survival and wrongful death claims.  See

Pope, 760 P.2d at 766.  Accordingly, we find that Nevada's survival statute of limitations applies

to Plaintiffs' survival claims, and that Plaintiffs are afforded the opportunity to establish that the

discovery rule tolled Nevada's one-year limitation period with regard to these claims.

### 3.      Implied Warranty Claim- Count XIV

Defendants next assert that the applicable statute of limitations under Nevada law is

shorter than the law in Pennsylvania for implied warranty claims in personal injury actions.

(Defs.' Mot. Dismiss at 5.)  We agree.  Nevada law imposed a two-year statute of limitations.

See Campos v. New Direction Equip. Co., No. 08-0286, 2009 WL 114193, at *2 (D. Nev. Jan. 16, 2009) ("The Nevada Supreme Court has held that personal injury actions are subject to the two-year statute of limitations, regardless of whether a plaintiff labels his claims as one sounding in contract or tort.") (citing Blotzke v. Christmas Tree, Inc., 499 P.2d 647 (Nev. 1972)).  It is well settled under Pennsylvania law that actions for breach of warranty are subject to the four-year statute of limitation prescribed in the Pennsylvania Commercial Code.  See Garber v. Ansell/Perry, 63 Pa. D.&C. 4th 426, 433 (Pa. Com. Pl. 2003); see also 13 Pa.C.S. §2725. Accordingly, because Nevada's two-year statute is shorter, we find that under the borrowing statute, the shorter Nevada period applies to the Plaintiffs' breach of implied warranty claim.

### B.    Tolling of the Applicable Statutes

In the above section, we have determined the applicable statutes of limitations for Plaintiffs' claims.  Defendants assert that all of Plaintiffs' claims are barred by the applicable statutes of limitations.  Plaintiffs assert that the discovery rule tolls the statutes of limitations in this action regarding all of their claims.  (Pls.' Resp. at 2.) They maintain that J&J did not recall the subject Infants' Tylenol until more than a year after Tracen's death, and that "it was only after Congress brought to light in 2010, the Defendants efforts to hide their manufacturing problems through the 'phantom recall' of Tylenol products" that Plaintiff, Stacy Sherfey, had any way of knowing that Defendants' pediatric medicines were defective and dangerous, and should not be given to children.  (Id.)  Similarly, Plaintiffs assert that the statute was tolled by the doctrine of fraudulent concealment[10] because J&J concealed from the public the existence of manufacturing

---

[10]To establish fraudulent concealment, Plaintiffs must prove: (1) that each defendant against whom estoppel is sought engaged in an affirmative act of fraud or concealment that served to mislead Plaintiff as to the existence of his claims; and (2) that Plaintiff did not otherwise know of his potential

and/or quality control issues at the Fort Washington facility where the defective Tylenol products were manufactured.  (Id.)

As noted earlier, we determined in a prior decision that the issue of whether the discovery rule and/or the doctrine of fraudulent concealment tolled the statute of limitations was premature because the record had not yet been fully developed.  See Sherfey, 2014 WL 715518, at *11-13. We are of the opinion that such issues continue to be premature.  Discovery in this matter has yet to take place.  Thus, any inquiry into Defendants' alleged effort to hide knowledge of defective pediatric problems from the public would be premature at this stage given that the factual record is completely undeveloped.[11]  Thus, Defendants have the option of again raising their statute of limitations arguments in a motion for summary judgment after the close of discovery.

### C.  Cognizable Claims

Defendants next assert that Plaintiffs' claims for violation of consumer protection law (Count XVI), civil conspiracy (Count XVII), punitive damages (Count XIX), and express warranty (Count XIII) "are not legally cognizable claims under applicable law with respect to any moving Defendant."  (Defs.' Mot. Dismiss at 8.)

### 1.  Deceptive Trade Practices- Count XVI

Nevada law authorizes suits by victims of consumer fraud.  The Nevada Deceptive Trade Practices Act ("NDTPA") provides in relevant part:

---

claims, nor could he have discovered his potential claims through the exercise of reasonable diligence. Stroud, 2008 WL 2061408, at *9-10.

[11]It is notable that in cases involving tolling due to allegations of fraudulent concealment, the Third Circuit has encouraged and approved of allowing the factual record to be sufficiently developed before reaching the issue.  See, e.g., Urland v. Merrell–Dow Pharmaceuticals, Inc., 822 F.2d 1268, 1276–77 (3d Cir.1987); Byrnes v. De Bolt Transfer, Inc., 741 F.2d 620, 626–27 (3d Cir. 1984).

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:

>> 2.      Fails to disclose a material fact in connection with the sale or lease of good or services.

N.R.S. § 598.0903(2).

Defendants assert that this claim should be dismissed because Plaintiffs' allegations are "entirely conclusory," and "Plaintiffs failed to assert any Defendant-specific facts related to the alleged misrepresentations or which specific provision of the NDTPA Defendant[s] [allegedly] violated."  (Defs.' Mot. Dismiss at 9) (quoting Chattem v. BAC Home Loan Servicing LP, No. 11-1727, 2012 WL 2048199, at *2 (D. Nev. June 5, 2012)).  Plaintiffs respond that they have stated a claim under the NDTPA, and that they have "thoroughly detail[ed] the Defendants' failure to disclose material facts of the defective pediatric medicines which they had to recall more than a year after Tracen Sherfey's death."  (Pls.' Resp. at 20.)

We are of the opinion that Plaintiffs have adequately pleaded a cause of action under Nevada's consumer protection law to withstand a motion to dismiss.  See Compl. ¶¶ 308-315.  Plaintiffs specifically allege that:

> The defendants in their advertising, promotion, marketing, distribution, and sale of defective, impure, and contaminated Infants' Tylenol violated the consumer protection laws through the use of false and/or misleading representations, misrepresentations, and/or omissions of material facts regarding the health risks, safety and efficacy of Infants' Tylenol to certain groups, including but not limited to the medical community, healthcare providers, and/or consumers, including the Plaintiffs' decedent Tracen Sherfey.

Compl. ¶ 313.  Accordingly, Defendants' request is denied.

2.      **Civil Conspiracy and Punitive Damages - Counts XVII and XIX**

Defendants assert that under Pennsylvania law where "no predicate cause of action exists

. . . claims for conspiracy fail as a matter of law" because "absent a civil cause of action for a

particular act, there can be no cause of action for civil conspiracy to commit that act." (Defs.'

Mot. Dismiss at 10) (citing Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. 2008).  Defendants

further argue that, similarly, "[i]f no cause of action exists, then no independent action exists for

a claim of punitive damages."  See Pioneer Commercial Funding Corp. v. Am. Fin. Mortg.

Corp., 855 A.2d 818, 833 n.33 (Pa. 2004) (quoting Kirkbride v. Lisbon Contractors, Inc., 555

A.2d 800, 802 (Pa. 1989)).  Defendants, therefore, argue that "[b]ecause Plaintiffs' underlying

claims are insufficient, their derivative liability theories should also be dismissed."  (Defs.' Mot.

Dismiss at 10.)

To state an actionable claim for civil conspiracy under Nevada law, a plaintiff must

allege: (1) a conspiracy agreement formed by the defendants to unlawfully harm the plaintiff, (2)

an act of fraud in furtherance thereof, and (3) resulting damages to the plaintiff.  See Jordan v.

State ex rel. Dep't of Motor Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005).  Here, we find

that Plaintiffs have adequately pleaded a claim for conspiracy to withstand a motion to dismiss at

this time.  See Compl. ¶¶ 318-331.  Plaintiffs aver in the Complaint:

> Beginning at least as early as December 2008 and continuing
> thereafter through the present, Defendants agreed to and did act in
> concert with one another and with other co-conspirators as
> described above, in a continuing conspiracy and/or concerted
> action to violate state law and to defraud Plaintiffs causing
> Plaintiffs to purchase the defective, impure and contaminated
> Infants' Tylenol based on misrepresentations and omissions
> relating to the safety and efficacy [of] this medicine.

Compl. ¶ 318.

In *Moore v. Johnson & Johnson*, the Court refused to dismiss Plaintiffs' civil conspiracy claim rejecting this exact same argument from J&J and holding that "[b]ecause the Court has not dismissed all the claims against J&J, this argument fails.  J&J may raise this argument again at the summary judgment stage."  No. 2:12-cv-00490-MAM, at 9 (E.D. Pa. Feb. 4, 2014).[12]  Here, like *Moore*, we have not dismissed all claims against J&J.  Accordingly, we will not dismiss this claim at this stage of the litigation.

Likewise, regarding the punitive damages claim, because we have not dismissed all of the claims against J&J, we will also not dismiss this claim at this time.  It is noted that the *Moore* Court also found that "J&J's argument for dismissal of plaintiffs' punitive damages claim is premature.  The punitive damages claim involves issues of choice of law and the appropriate standard, which would be assessed at the summary judgement stage."  *Id.* at 9-10.  For these same reasons, Defendants' request to dismiss this claim is denied.

### 3.    Breach of Express Warranty- Count XIII

In their Complaint, Plaintiffs aver a claim for breach of express warranty based on J&J's "Credo."  Compl. ¶¶ 279-285.  Plaintiffs state:

> Under 'Our Credo,' J&J allegedly believes that our first
> responsibility is to the doctors, nurses and patients, to mothers and
> fathers and all others who use our products and services.  In
> meeting their needs everything we do must be of high quality.

Compl. ¶ 49.  Plaintiffs assert that "J&J's express warranty is that its companies' responsibility is to the 'patients' and 'mothers and fathers who use their products," and that J&J "expressly warrant[s] that their products 'must be of high quality.'"  (Pls.' Resp. at 24.)  Plaintiffs argue that

---

[12]This Order and decision rendered by Judge McLaughlin is not cited in Westlaw or Lexis at present.

the "meaning of Defendants' statements is something for a jury to decide and not something that can be addressed at the 12(b)(6) stage," and that J&J's statements must be judged in the context of their recall of the infants' Tylenol which allegedly killed Tracen.  (Id.)

Defendants assert that their "Corporate Credo" is not an express warranty about the "safety and/or efficacy of the Infants' Tylenol purchased by the Plaintiffs," but is a "statement of the values that guide J&J's corporate decision-making."  (Defs.' Mot. Dismiss at 10-11.) Defendants argue further that this "Credo" "does not address any specific products or contain any mention of safety and/or efficacy, and makes no representation of fact that could be construed as a warranty."  (Id. at 11.)

We are of the opinion that it is indeed questionable whether this "Credo" amounts to an express warranty on the part of J&J with respect to the Infants' Tylenol at issue.  However, we will not dismiss this claim at this time.  We allow Plaintiffs to further develop this claim during discovery, and Defendants will have the option to challenge this claim in a summary judgment motion if they so choose.

**IV.    CONCLUSION**

We find that under Pennsylvania's "borrowing statute" that Nevada's two-year statute of limitations regarding Plaintiffs' wrongful death and negligence claims applies here because this action accrued in Nevada and Pennsylvania does not first bar these claims.  In the alternative, even if Pennsylvania's statute applied, we find that under a conflict of laws analysis and the principle of "depecage," Nevada's discovery rule is applicable to these claims allowing Plaintiffs the opportunity to establish that the statute was tolled.  We also find, under the "borrowing statute," that Nevada's statutes of limitations with respect to Plaintiffs' survival and implied

21

warranty claims are applicable.  Furthermore, we find that the issue of whether any or all of Plaintiffs' claims are barred by these applicable statutes is premature given that discovery has yet to take place.  Defendants, thus, can choose to again raise this issue in a motion for summary judgment after the close of discovery.

Lastly, we find that Plaintiffs have sufficiently pleaded causes of action for Deceptive Trade Practices (Count XVI), Civil Conspiracy (Count XVII), Punitive Damages (Count XIX), and Express Warranty (Count XIII) to withstand a Motion to Dismiss.  Accordingly, we deny Defendants' Motion.

An appropriate Order follows.